**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Zavanna, LLC, and Palace Exploration Company, | ) ) ) | **REPORT AND RECOMMENDATION** |
| Plaintiffs, | ) ) | **RE MOTION TO REMAND AND MOTIONS TO DISMISS, STAY,** |
| vs. | ) ) | **OR TRANSFER** |
| RoDa Drilling Company, RoDa Drilling, LP, Zenergy, Inc., and Zeneco, Inc., | ) ) ) | |
| Defendants. | ) ) | Case No. 4:09-cv-022 |

Before the court are three motions to dismiss, stay, or transfer brought by the defendants

(Doc Nos. 8, 11, & 13) and a motion to remand by the plaintiffs (Doc. No. 17).  These motions have

been referred to the undersigned for a recommendation regarding disposition.

## I.    BACKGROUND

### A.    The parties

#### 1.    Named plaintiffs

Zavanna, LLC ("Zavanna") is a Colorado limited liability company.  It is alleged in a related

Oklahoma federal district court action that Zavanna's  members are four entities whose members

or owners, in turn, are citizens of the states of Texas, Florida, Colorado, and New Mexico.[1]

---

[1]   In the Eighth Circuit, the citizenship of a limited liability company for purposes of diversity jurisdiction is that of its members.  GMAC Commercial Credit LLC v. Dillard Department Stores, Inc., 357 F.3d 827, 829 (8th Cir. 2004). In this case, the state court complaint alleges that Zavanna is a Colorado limited liability company.  The notice of removal provides additional information about Zavanna's directors and managers, but that information is insufficient to determine Zavanna's citizenship for diversity purposes.   In the related Oklahoma federal district court action, which is discussed in more detail *infra*, the plaintiff (who is one of the removing defendants in this action) alleged in an amended complaint the additional information set forth above with respect to the citizenship of Zavanna's members. (RoDa Drilling Company v. Zavanna, LLC, et al, Case No. 4:08-cv-00684, Doc. No. 100, ¶ 2.). Since none of the parties contend that the citizenship of Zavanna is material to the resolution of the pending motions, it will be assumed that its citizenship is different from the defendants and Palace, whom the defendants seek to realign, and is not an issue.

Palace Exploration Company ("Palace") is an Oklahoma corporation, which claims that its principal place of business is New York, New York.

### 2.   Named defendants

RoDa Drilling, LP is a Delaware limited partnership comprised of RoDa, LLC (general partner) and the Roland and Dawn Arnall Living Trust (limited partner), both of which are alleged to be citizens of California.  RoDa states that RoDa Drilling Company is no longer a separate entity and has been merged into RoDa LP.  For purposes of the pending motions, these allegations will be assumed as being true and all further references to "RoDa" are to a single entity that includes both RoDa Drilling, LP and RoDa Drilling Company.

Zenergy, Inc. ("Zenergy") is an Oklahoma Corporation that has its principal place of business in Tulsa.  Zeneco, Inc. ("Zeneco") is also an Oklahoma Corporation with its principal place of business in Tulsa.  Zenergy and Zeneco are represented by the same counsel in this action and have been represented by the same counsel in the two other related actions mentioned herein.  In this case,  Zenergy and Zeneco take the same positions, which also appears to be the case in the related actions.  Consequently, at times, they will be referred to as "Zenergy/Zeneco."

### B.   Background leading up to the present disputes

On April 28, 1999, Zavanna, Palace, and Zenergy's predecessor in interest (Zinke & Trumbo, Inc.) entered into a "Participation Agreement" (Doc. No. 1-3), the subject of which was certain oil and gas properties located in North Dakota that would also be governed by a Joint Operating Agreement ("JOA").  At the time of the execution of the Participation Agreement, Zavanna owned part of the working interest in the subject properties and was in the process of

acquiring the balance, a substantial portion of which it agreed to sell to Palace. Upon completion of the transfers to Palace, Zavanna ended up with 30% of the working interests in the Joint Leasehold Properties, and Palace owned the remaining 70%, making it the majority owner.

The Participation Agreement provided that Palace would be the "Operator" of the Joint Leasehold properties, but that it would designate Zenergy's predecessor to be the actual or contract operator. Zenergy's predecessor did not own a working interest in the Joint Leasehold properties, but, somewhat curiously, it was made a party to the Participation Agreement.

Although the Participation Agreement provided for Palace's designation of Zenergy as the contract operator, the Agreement stated this did not relieve Palace of its rights and liabilities as Operator under the JOA. The Agreement also attempted to provide for what would happen if Palace later sold a significant portion of its working interest in the Joint Leasehold to a third party in terms of who would then become the Operator under the JOA.

It is these provisions that give rise to most of the disputes in this case. The language of the Participation Agreement most in dispute is the following:

> 6.     OPERATIONS AND THE JOINT OPERATING AGREEMENT. The Chesapeake Leasehold, the Zavanna Leasehold, the Chesapeake Producing Properties, the Brown Well and any additional leasehold interest acquired pursuant to the Area of Mutual Interest ("AMI"), as outlined herein (all collectively may be referred to as the "Joint Leasehold"), will be subject to a 1992 AAPL Joint Operating Agreement ("JOA") in the form attached as Exhibit "B," JOA. A separate JOA containing the same terms as set forth in Exhibit "B" will be prepared and executed with regard to each drilling and spacing unit which shall be binding upon the Parties whether or not executed.
>
> Palace shall be the Operator under the terms of the JOA. Palace shall designate Zinke & Trumbo Inc. [Zenergy's predecessor in interest], as its Operator. However, any designation of a contract operator by Palace shall not relieve Palace of any liabilities nor prevent it from exercising any rights as Operator under the JOA.

3

> In the event Palace conveys a portion of its interest in the Joint Leasehold to a third party who is not a Party to this Agreement so that Palace's undivided interest in the Joint Leasehold is less than 30.00%, then Palace shall be deemed to have resigned as Operator and Zavanna will become Operator under the JOA.

(Doc. No. 1-3).

Notably, the Participation Agreement, which appears to have been executed by all of the parties in Tulsa, provided that it would be interpreted and enforced in accordance with laws of the State of Colorado.   The Joint Leasehold properties are located in North Dakota.

Sometime after the Participation Agreement was entered into, Palace sold a small portion (3.5%) of its working interests in the Joint Leasehold properties to RZ, Inc., the predecessor of Zeneco.  Zeneco appears to be related in some fashion to Zenergy, the contract operator, which, as previously noted, has no working interest in the Joint Leasehold properties.

In 2002, Palace entered into a relationship with RoDa whereby RoDa provided funds for the acquisition of certain oil and gas interests that initially would be held in Palace's name, purportedly for the benefit of both parties.  Eventually, there was litigation over this relationship, which resulted in an Oklahoma federal district court issuing a preliminary injunction requiring Palace to transfer to RoDa the properties in which RoDa had a beneficial interest.  RoDa Drilling Company v. Siegal, 552 F.3d 1203, 1205-1208 (10th Cir. 2009).  Palace appealed.  On January 20, 2009, the Tenth Circuit affirmed, concluding that RoDa had made the required showing of likely success on the merits to warrant the transfer. Id. at 1209-1215.

The Tenth Circuit's decision preceded the filing of this action in state district court.   Since that decision, Palace has been working on making the required transfers, but it alleged this was not completed at the time of the filing and removal of this case.  For purposes of the pending motions, this will be assumed to be true.

4

Sometime after RoDa acquired what it purports to be a "beneficial interest" in most of Palace's remaining working interests, RoDa alleged in the Oklahoma federal district action discussed below that Zavanna had claimed that the disputed language of the Participation Agreement had been triggered and Zavanna had became the Operator under the JOA, even though legal title had not yet been transferred. RoDa also claimed that Zavanna advised it no longer wanted Zenergy to be the contract operator and that it would assume active operation of the working interests. RoDa opposes Zavanna becoming the Operator on various grounds, including its argument that the majority owner of the working interests is entitled to be the Operator, meaning itself. RoDa also opposes discharging Zenergy as the contract operator.

Zavanna takes the position, among other things, that it is entitled to become the Operator under the Participation Agreement once Palace's ownership interest dropped below 30%, but it appears to have vacillated on the issue of whether RoDa's acquisition of the requisite percentage of beneficial interest in the working interests was enough or whether it took a legal assignment. Also, Zavanna takes the position that it is free to discharge Zenergy as contractor operator and is entitled to assume the active role of operator.

Zenergy and Zeneco have opposed Zenergy's termination as contract operator and have aligned themselves with RoDa with respect to most, if not all, of the issues.

Finally, Palace takes the position that Zavanna becomes the Operator after the completion of the assignment of the working interests causing its ownership percentage to drop below 30% by virtue of the provisions of the Participation Agreement. Palace also takes the position that Zenergy is no longer entitled to be the contract operator after Palace ceases to be the Operator.

### C.     The prior filed Oklahoma federal court action

On November 19, 2008, which was approximately four months prior to the commencement of this action, RoDa filed suit in the federal district court for the Northern District of Oklahoma and named all of the parties in this action as defendants.  (RoDa Drilling Company v. Zavanna, LLC et al, No. 4:08-cv-00644, Doc. No. 2).   Zavanna and Palace moved to dismiss, ultimately alleging, among other things, lack of diversity jurisdiction on two grounds.  The first was an alleged failure to meet the amount-in-controversy requirement of 28 U.S.C. § 1332.  The second was the argument that diversity would be lacking if the parties were aligned according to their actual interests.   More particularly, they argued that Zenergy and Zeneco should be aligned with RoDa as party plaintiffs, since all three were seeking essentially the same relief, and that, if realigned, diversity would be lacking because there then would be Oklahoma corporations on both sides of the case, *i.e.*, Zenergy and Zeneco as plaintiffs and Palace as one of the defendants.  (Doc. No. 28-2; RoDa Drilling Company v. Zavanna, LLC et al, No. 4:08-cv-00644, Doc. No. 95).  The Oklahoma federal district denied the motions on June 26, 2009, concluding that the complexity of the case prevented any definitive ruling on the request for realignment at that time.  The court stated, however, it might revisit the issue, either upon a new motion by the parties or its own motion, as the case progressed and the parties had some opportunity for discovery.  (Id.).

RoDa's Oklahoma federal case is still pending.  Some discussion of the positions taken by the parties in that case is helpful in terms of context.

### 1.     Claims of plaintiff RoDa in the Oklahoma federal action

RoDa asserts the following claims in its amended complaint in the Oklahoma federal court action:

1. <u>Requests for declaratory relief under the Participation Agreement</u>.  RoDa requests that the court construe the Participation Agreement and declare that:

> (1)    A declaration that Palace's transfer to RoDa of a beneficial interest in the Properties did not result in the appointment of Zavanna as operator under Article 6 of the Participation Agreement;

> (2)    A declaration that if and when legal title to the Properties is transferred from Palace to RoDa, such transfer will not result in the appointment of Zavanna as operator under Article 6 of the Participation Agreement;

> (3)    A declaration that Palace has not resigned as operator under the Participation Agreement and that Zenergy is still the defacto or contract operator;

> (4)    A declaration that Zavanna cannot unilaterally terminate Zenergy as defacto or contract operator;

> (5)    A declaration that in the event Palace resigns as operator, whether by operation of Article 6 of the Participation Agreement or otherwise, RoDa will become the operator of the Properties;

> (6)    A declaration that Zavanna is not authorized to undertake any operations on behalf of the other working interest owners with respect to the Properties, including but not limited to, staking wells, entering agreements with surface owners, and negotiating surface damages.  To the extent Zavanna has engaged in such activities with respect to the Properties, its actions were in violation of the JOA, the working interest owners are not bound by such actions, and Zavanna is not entitled to recovery of any portion of its costs from the other working interest owners.

2. <u>Reformation of the Participation Agreement</u>.  Alternatively, RoDa requests that the disputed language of the Participation Agreement be reformed to reflect what it claims were the actual agreements of Zavanna and Palace.  RoDa claims the actual agreements were (1) that the party with the largest working interest would always be

the Operator under the JOA, and (2) that, regardless of whether the formal operator was Palace or Zavanna, that they agreed that Zenergy would be hired as the contract operator.

3.      <u>Damages re the Bratton Well</u>.  RoDa also seeks damages from Zavanna with respect to its purported breach of an agreement to convert a certain well into a saltwater disposal well and with respect to its continued opposition to the well after the option period for its participation had passed.  It is not clear what relationship, if any, this dispute has to the disputes over who should be the Operator under the JOA and whether Zenergy must continue to be the actual operator of the Joint Leasehold.

(<u>RoDa Drilling Company v. Zavanna, LLC et al</u>, No. 4:08-cv-00644, Doc. No. 100).

**2.      The position and claims of the defendants in the Oklahoma federal action**

**a.      Zavanna**

In its answer, Zavanna opposes the relief requested by RoDa, and affirmatively seeks the following relief by way of crossclaims and a counterclaim:

1.      <u>Requests for declaratory relief under the Participation Agreement</u>.  Zavanna requests declaratory relief relative to the construction of the Participation Agreement, which, essentially, is opposite of what is requested by RoDa.  Zavanna asks for a declaration that it became the Operator of the Joint Leasehold under the terms of the Participation Agreement upon Palace's transfer of the requisite percentage of working interests in the Joint Leasehold properties to RoDa that would trigger the language of the Participation Agreement.  Zavanna also asks for a declaration that it has the right to terminate Zenergy as the contract operator.

8

2.    <u>Claims of breach of the Participation Agreement by Zenergy</u>.  Zavanna pleads by crossclaim the following alleged breaches of the Participation Agreement by Zenergy:  failure to turn over operation of the Joint Leasehold properties and related records; failure to follow certain contractually required accounting procedures; and failure to properly account for certain costs and expenses as well as insurance proceeds as discovered by audit.

(<u>RoDa Drilling Company v. Zavanna, LLC et al</u>, No. 4:08-cv-00644, Doc. No. 112).

### b.    Zeneco and Zenergy

Zeneco and Zenergy admit the allegations of RoDa's complaint in their joint answer and have crossclaimed against Zavanna and Palace for most, if not all, of the same affirmative relief requested by RoDa in the complaint.  (<u>RoDa Drilling Company v. Zavanna, LLC et al</u>, No. 4:08-cv-00644, Doc. Nos. 38 & 39).

### c.    Palace

While it is not entirely clear from its answer, other filings in the case indicate that Palace's position is that Zavanna is entitled to become the Operator when the legal transfer of working interests to RoDa causes Palace's ownership percentage to fall below 30%, given the language of the Participation Agreement.  Also, Palace has claimed that Zenergy's right to be the contract operator terminates once Palace is no longer the Operator.  (<u>RoDa Drilling Company v. Zavanna, LLC et al</u>, No. 4:08-cv-00644, Doc. Nos. 46 & 77).

### D.    The Oklahoma state court action

Purportedly on the same day that Zavanna and Palace commenced this action in state court in  North Dakota, Zenergy and Zeneco filed a state court action in Oklahoma naming as defendants

Zavanna, RoDa, and Palace.  The Zenergy/Zeneco complaint  in the Oklahoma state action mirrors the complaint filed by RoDa in the Oklahoma federal action.  (Doc. No. 12-4; <u>RoDa Drilling Company v. Zavanna, LLC et al</u>, No. 4:08-cv-00644, Doc. Nos. 2 & 100).

### E.    The subject North Dakota action

Zavanna and Palace commenced this action in North Dakota state district court on or about March 25, 2009.  RoDa filed its petition for removal on April 24, 2009, and Zenergy and Zeneco filed their consent to removal on April 29, 2009.  As a basis for this court's jurisdiction, defendants claim diversity jurisdiction, despite the fact that co-plaintiff Palace and defendants Zenergy and Zeneco are all incorporated in Oklahoma.  The defendants have several arguments as to why the facial lack of diversity should be ignored and these are addressed later.

In the complaint, Zavanna and Palace request judgment declaring (1) that, when the transfer of Palace's interests to RoDa results in Palace's undivided interest in the Joint Leasehold properties dropping below 30%, Palace shall be deemed to have resigned as Operator and Zavanna will become the Operator.  Separately, Zavanna seeks injunctive relief forcing Zenergy to turn over operation of the Joint Leasehold properties to Zavanna as well as a declaration that Zavanna can proceed by separate lawsuit to recover any damages resulting from Zenergy's failure to turn over operation of the Joint Leasehold properties.  The only substantive difference between Zavanna's claims in this action and its crossclaims in the Oklahoma federal district court action appears to be the absence here of the claims against Zenergy for damages related to certain accounting matters under the Participation Agreement. (Doc. No. 1-2).

The defendants have yet to answer given their pending motions to dismiss, transfer, or stay.

## II.   PLAINTIFFS' MOTION TO REMAND

### A.   The facial lack of diversity and the necessity for affirmative court action to sustain subject matter jurisdiction

There is no dispute about the fact that co-plaintiff Palace and co-defendants Zenergy and Zeneco are all Oklahoma citizens for diversity jurisdiction purposes, given that they are all incorporated in Oklahoma, and that diversity jurisdiction is lacking based on the current alignment of the parties.[2] In fact, the notice of removal acknowledges the facial lack of diversity and states that its claim of diversity jurisdiction is premised upon the court either realigning the parties or ruling that Palace is a nominal party whose interests can be ignored. (Doc. No. 1).

### B.   Law governing realignment of the parties

The current alignment of the parties is not conclusive in terms of determining whether diversity of citizenship exists. Universal Underwriters Ins. Co. v. Wagner, 367 F.2d 866, 870 (8th Cir.1966) ("Universal Underwriters"). Rather, the court is obligated to "look beyond the pleadings, and arrange the parties according to their sides in the dispute." City of Indianapolis v. Chase Nat'l Bank of City of New York, 314 U.S. 63, 69 (1941) (quoted case omitted)); see id.

Unfortunately, the lower federal courts are divided over the proper test to be followed for realignment of the parties. Some courts follow a "primary purpose" test, which requires that the

---

[2] Under § 1441(a), an action in state court may be removed to the federal district court in which the action is pending if the federal court would have original jurisdiction. City of Chicago v. International College of Surgeons, 522 U.S. 156, 163(1997). And, when the claimed basis for original jurisdiction is diversity jurisdiction, § 1332 requires "complete diversity,"meaning that:

In a case with multiple plaintiffs and multiple defendants, the presence of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the *entire action*.

Exxon Mobile Corp. v. Allapattah Services, Inc., 545 U.S. 546, 553 (2005) (emphasis added); see, e.g., Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365 ( 1978); Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435 (1806). In addition, the removal statutes do not allow a federal court to keep the claims for which diversity may exist if pled alone and remand those involving parties that defeat diversity, comparable to what is permitted by § 1441(c) for federal question cases.

court identify the primary dispute and align together those parties for which there is no adversity in terms of the primary dispute.  Other federal courts apply the "actual and substantial conflict" test (sometimes also referred to as the "collision of interests" test), which is broader.  Under this test, realignment of the parties is not required when there is an actual and substantial conflict between the parties that are sought to be realigned, even if it is not necessarily the primary dispute.  E.g., Maryland Cas. Co. v. W.R. Grace and Co., 23 F.3d 617, 622-623 (2d Cir. 1993) (discussing the conflicting positions of the lower courts and the two tests); Federal Insurance Company v. Tyco International Ltd., 422 F. Supp. 2d 357, 387-392 & n.20 (S.D.N.Y. 2006) (same); see generally C. Wright, A. Miller & E. Cooper, 13E Federal Practice and Procedure § 3607 (3d ed.) (hereinafter "Federal Practice and Procedure").

The Eighth Circuit follows the "actual and substantial" test.  Universal Underwriters, 367 F.2d at 870-871; Hartford Accident and Indemnity Company. v. Doe Run Resources Corporation, 2009 WL 1067209, at *2 (E.D. Mo. April 21, 2009) (noting that the Eighth Circuit in Universal Underwriters required only the existence of an actual and substantial conflict, despite mention of the primary purpose of the suit, and noting other Eighth Circuit district court decisions reaching the same conclusion);  Federal Insurance Company v. Tyco International Ltd., 422 F. Supp. 2d at 389 n.20. This is also the test applied by this court in the past. See EOG Resources, Inc. v. Badlands Power Fuels, LLC, 2009 WL 424431, *5 (D.N.D. Feb.18, 2009).

### C.   Actual and substantial disputes between Palace and Zenergy/Zeneco prohibit realignment of Palace as a defendant

In the complaint in this action, Palace and Zavanna allege that Zavanna is entitled to become the Operator under the terms of the Participation Agreement when Palace's assignment of working interests to RoDa causes Palace's ownership interest to fall below 30%. (Doc. No. 1-2, ¶ 24 & the

prayer for relief).  They allege that Zenergy and Zeneco disagree and take the position that Zavanna does not become the Operator.  (Doc. No. 1-2, ¶¶ 25-26).

It also appears that Palace and Zavanna take the position in their complaint  that one of the consequences of Zavanna replacing Palace as Operator is that  Zenergy's status as contract operator terminates.  And, they allege that  Zenergy has stated  it will not allow Zavanna to act as Operator. (Doc. No.  1-2, ¶¶ 24, 27, 30-31 & prayer for relief).

The fact that Palace disagrees with Zenergy and Zeneco over the two issues of whether Zavanna is entitled to become the Operator when Palace's ownership interest falls below 30% and Zenergy's status as contractor operator when that happens is confirmed by the positions taken by the parties in other litigation as previously outlined.  Moreover, the defendants in their briefing do not disagree that these conflicts exist.  (Doc. Nos. 23, p. 8; 24).  Rather, they present two arguments for why these conflicts are not "actual and substantial" and can be ignored.

Defendants first argue these disputes are not actual and concrete because the requisite percentage of working interests had not been assigned by Palace to RoDa to trigger the language of the Participation Agreement when the complaint was filed.   This argument fails, however, for no other reason than the fact there was already  in place a  federal court order requiring the transfer of the working interests to RoDa, which had been affirmed by the Tenth Circuit  Cf. Maryland. Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941) (the actual controversy requirement of the Declaratory Judgment Act is satisfied if there is "a substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment"); Gopher Oil Co. v. Bunker, 84 F.3d 1047, 1050-51 (8th Cir. 1996). Further,

defendants' argument is disingenuous, given what they have pled in their own actions in Oklahoma.

Defendants secondly argue that Palace's position is akin to that of a nominal party with respect to these two disputes because Palace has declared it has no interest in serving as the future operator. Even assuming that to be true, Palace has not sold all of its working interests in the Joint Leasehold Properties and remains a minority owner. Thus, it continues to have a substantive interest in who becomes the Operator under the JOA and whether or not there is a contract operator. Under these circumstances, the argument that Palace is a nominal party whose interest can be ignored is specious. See Lincoln v. Property Co. v. Roche, 546 U.S. 81, 92-93 (2005) (party with a stake in the outcome is not a nominal party); Fisher v. Dakota Community Bank, 405 F. Supp. 2d 1089, 1099 (D.N.D. 2005) (discussing the attributes of a nominal party). Notably, the defendants have included Palace as a party defendant in the two Oklahoma actions.

## D.    Remand is required

In summary, there are actual and substantial conflicts between Palace and Zenergy/Zeneco. Given these conflicts, there is no basis under governing Eighth Circuit case law for realigning Palace and making it a defendant. Further, Palace is not a nominal party, and there is no basis for ignoring its interests. Consequently, there is no diversity jurisdiction in this case give the presence of Oklahoma corporations on both sides of the case. And, as discussed in more detail below, 28 U.S.C. § 1447(c) requires remand when a federal court lacks subject matter jurisdiction over a removed action.

## III.    DEFENDANTS' MOTIONS TO DISMISS, STAY, OR  TRANSFER

A remand because of lack of subject matter jurisdiction necessarily moots the remaining motions by the defendants to dismiss, stay, or transfer.  Consequently, whatever merits the motions might have if the court had subject jurisdiction will not be addressed.

Defendants have requested, however, that the court defer ruling on the motion to remand and act first on the motions to dismiss, stay, or transfer.  This is opposed by the plaintiffs, who argue that the court is required to address the propriety of the removal and whether the court has subject matter jurisdiction before taking any other action.

The recommendation is that the court act first on the motion to remand.  The reasons why are addressed separately with respect to the alternative requests for dismissal, stay, or transfer.

### A.    Motion to dismiss

 Section 1447 governs the procedure of actions removed from state court and provides in relevant part in subsection (c):

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

This language is mandatory.  If the court determines it lacks subject matter jurisdiction over a removed action, Congress has directed that it must be remanded to state court, rather than dismissed. International Primate Protection League v. Administrators of Tulane Educ. Fund, 500 U.S. 72, 87-89 (1991); Cunningham v. BHP Petroleum Great Britain PLC, 427 F.3d 1238, 1244-1248 (10th Cir. 2005); University of South Alabama v. American Tobacco Co., 168 F.3d 405, 409-410 (11th Cir. 1999); Toumajian v. Frailey, 135 F.3d 648, 653 (9th Cir.1998); First Nat. Bank of Salem v. Wright, 775 F.2d 245, 246 (8th Cir. 1985).

In University of South Alabama, the Eleventh Circuit discussed  the interplay of § 1447(c)'s statutory command and the concerns of federalism and comity with the state courts upon which it

is grounded.  The court stated the following, which is also relevant to the defendants alternative

requests for stay or transfer, which  are addressed later:

> It is by now axiomatic that the inferior federal courts are courts of limited
> jurisdiction. They are "empowered to hear only those cases within the judicial power
> of the United States as defined by Article III of the Constitution," and which have
> been entrusted to them by a jurisdictional grant authorized by Congress. Taylor v.
> Appleton, 30 F.3d 1365, 1367 (11th Cir.1994). Congress, however, may " 'give,
> withhold or restrict such jurisdiction at its discretion, provided it be not extended
> beyond the boundaries fixed by the Constitution.' " Marathon Oil Co. v. Ruhrgas,
> 145 F.3d 211, 215 (5th Cir.1998) (en banc) (quoting Kline v. Burke Constr. Co., 260
> U.S. 226, 234, 43 S.Ct. 79, 82, 67 L.Ed. 226 (1922)), cert. granted, 525 U.S. 1039,
> 119 S.Ct. 589, 142 L.Ed.2d 532 (1998) (No. 98-470). And because the Constitution
> unambiguously confers this jurisdictional power to the sound discretion of Congress,
> federal courts "'should proceed with caution in construing constitutional and
> statutory provisions dealing with [their] jurisdiction.'" Id. at 216 (quoting Victory
> Carriers, Inc. v. Law, 404 U.S. 202, 212, 92 S.Ct. 418, 425, 30 L.Ed.2d 383 (1971)).
>
> Accordingly, "[w]hen a federal court acts outside its statutory subject-matter
> jurisdiction, it violates the fundamental constitutional precept of limited federal
> power." Id. (citing Oliver v. Trunkline Gas Co., 789 F.2d 341, 343 (5th Cir.1986)).
> Indeed, such an action unconstitutionally invades the powers reserved to the states
> to determine controversies in their own courts, see Victory Carriers, 404 U.S. at 212,
> 92 S.Ct. at 425 (quoting Healy v. Ratta, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78
> L.Ed. 1248 (1934)), as well as "offends fundamental principles of separation of
> powers," Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 118 S.Ct. 1003, 1012,
> 140 L.Ed.2d 210 (1998). Simply put, once a federal court determines that it is
> without subject matter jurisdiction, the court is powerless to continue. As the
> Supreme Court long ago held in Ex parte McCardle, 74 U.S. (7 Wall.) 506, 19 L.Ed.
> 264 (1868), "[w]ithout jurisdiction the court cannot proceed at all in any cause.
> Jurisdiction is power to declare the law, and when it ceases to exist, the only function
> remaining to the court is that of announcing the fact and dismissing the cause." Id.
> at 514; see also Wernick v. Mathews, 524 F.2d 543, 545 (5th Cir.1975) ("[W]e are
> not free to disregard the jurisdictional issue, for without jurisdiction we are
> powerless to consider the merits.").
>
> A necessary corollary to the concept that a federal court is powerless to act
> without jurisdiction is the equally unremarkable principle that a court should inquire
> into whether it has subject matter jurisdiction at the earliest possible stage in the
> proceedings. Indeed, it is well settled that a federal court is obligated to inquire into
> subject matter jurisdiction *sua sponte* whenever it may be lacking. See Fitzgerald v.
> Seaboard Sys. R.R., 760 F.2d 1249, 1251 (11th Cir.1985) (per curiam); Wernick, 524
> F.2d at 545; see also Save the Bay, Inc. v. United States Army, 639 F.2d 1100, 1102
> (5th Cir.1981) (per curiam) (holding that courts must constantly examine the basis
> of their jurisdiction before proceeding to the merits).  * * * *

We add that our removal jurisdiction is no exception to a federal court's obligation to inquire into its own jurisdiction. Pursuant to 28 U.S.C. § 1441(a) (1994), "[a]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Therefore, when an action is removed from state court, the district court first must determine whether it has original jurisdiction over the plaintiff's claims. See Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1556-57 (11th Cir.1989). For the purposes of this case, that issue turns on whether there is complete diversity of citizenship between the parties. See 28 U.S.C. §§ 1332, 1441(b). If there is jurisdiction, then removal is appropriate and the court may proceed to the merits of the case.

However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded" to the state court from whence it came. 28 U.S.C. § 1447(c). This provision is mandatory and may not be disregarded based on speculation about the proceeding's futility in state court. See International Primate Protection League v. Administrators of Tulane Educ. Fund, 500 U.S. 72, 87-89, 111 S.Ct. 1700, 1709-10, 114 L.Ed.2d 134 (1991); Smith v. Wisconsin Dep't of Agric., Trade and Consumer Protection, 23 F.3d 1134, 1139 (7th Cir.1994); see also Bruns v. National Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir.1997) (section 1447(c) is mandatory); Bromwell v. Michigan Mut. Ins. Co., 115 F.3d 208, 213 (3d Cir.1997) (same); Maine Ass'n of Interdependent Neighborhoods v. Commissioner, Me. Dep't of Human Servs., 876 F.2d 1051, 1054 (1st Cir.1989) (same). Moreover, a federal court must remand for lack of subject matter jurisdiction notwithstanding the presence of other motions pending before the court. See, e. g., Marathon Oil, 145 F.3d at 220 (holding that district court should have considered motion to remand for lack of subject matter jurisdiction before it addressed motion to dismiss for want of personal jurisdiction); Toumajian v. Frailey, 135 F.3d 648, 655 (9th Cir.1998) (holding that district court should have remanded for lack of subject matter jurisdiction and should not have dismissed on grounds of ERISA preemption); Avitts v. Amoco Prod. Co., 53 F.3d 690, 693 (5th Cir.1995) (per curiam) (holding that district court had no jurisdiction to order interim costs and attorneys' fees where action should have been immediately remanded for lack of subject matter jurisdiction); Smith, 23 F.3d at 1139 (holding that district court had no authority to dismiss removed claim without subject matter jurisdiction); In re Bear River Drainage Dist., 267 F.2d 849, 851 (10th Cir.1959) (holding that motion to remand for lack of subject matter jurisdiction necessarily precedes motion to dismiss); Nichols v. Southeast Health Plan of Ala., Inc., 859 F.Supp. 553, 559 (S.D.Ala.1993) (same).

Because removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09, 61 S.Ct. 868, 872, 85 L.Ed. 1214 (1941). Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court. See Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir.1994) (citing

18

Boyer v. Snap-on Tools Corp., 913 F.2d 108 (3d Cir.1990); Coker v. Amoco Oil Co., 709 F.2d 1433 (11th Cir.1983)). A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts. For example, in Marathon Oil, the district court dismissed an action on removal from state court for want of personal jurisdiction before reaching the issue of subject matter jurisdiction. 145 F.3d at 215. On rehearing en banc, the Fifth Circuit held that the district court erred in failing to first examine its subject matter jurisdiction and, because jurisdiction was in fact lacking, in failing to remand to state court. See id. at 220. The court reasoned that such an approach "accords the proper respect to the state courts, as the residual courts of general jurisdiction, to make the personal jurisdiction inquiry when [federal courts] lack either constitutional or statutory subject-matter jurisdiction over a removed case." Id.; see also Bromwell, 115 F.3d at 214 (noting that justiciability is a matter for the state court to decide where case should have been remanded to state court for lack of subject matter jurisdiction rather than dismissed); Smith, 23 F.3d at 1139 (declining to speculate on issue of state law where case should have been remanded to state court for lack of subject matter jurisdiction rather than dismissed).

In the instant case, the district court should have resolved the issue of subject matter jurisdiction before reaching the merits of any other issue, particularly where so important and complicated a question of state law involving the power of Alabama's Attorney General was at stake. Although a Notice of Dismissal pursuant to Rule 41(a)(1) normally does not present this concern, the district court unquestionably determined the scope of the Attorney General's authority under Alabama law without first confirming its own jurisdiction to entertain the case. We believe that this course was neither prudent nor supported by principles of comity. Indeed, because the district court was in fact without subject matter jurisdiction, see infra, the court's ruling was in essence an advisory opinion. In sum, the district court erred in failing to first address its power to act.

168 F.3d at 409-411.

As noted by the Eleventh Circuit's discussion, the statutory command of remand in the event subject matter jurisdiction is lacking, and the concerns of federalism and comity with the state courts upon which it is grounded, necessarily require that the court address its power to hear the case at the earliest stage and prior to any substantive rulings, including motions to dismiss.   E.g., University of South Alabama v. American Tobacco Co.,168 F.3d at 410 (citing numerous other cases); Toumajian v. Frailey, 135 F.3d at 657-658; American Standard, Inc. v. Oakfabco, Inc., 498 F. Supp.

2d 711, 717 (S.D.N.Y. 2007).[3]  In fact, in cases where the courts of appeal have concluded that a district court has erred in assuming jurisdiction and not remanding the case, the courts have declared void any substantive rulings made by the district court and have ordered the cases remanded back to state court unencumbered by the rulings.  E.g., Cunningham v. BHP Petroleum Great Britain PLC, 427 F.3d at 1245-1246 (citing other cases); Toumajian v. Frailey, 135 F.3d at 658.

Defendants cite to this court's prior decisions in  Pressdough of Bismarck LLC v. A& W Restaurants, Inc., 587 F. Supp. 2d 1079 (D.N.D. 2008) and Williston Basin Interstate Pipe Line Construction Co. v. Sheehan Pipe Line Constr.Co., 316 F. Supp. 2d 864, 867 (D.N.D. 2004), both of which were actions removed from state court,  as authority for the court deferring to the Oklahoma federal case as "first filed" and dismissing this case.  These cases, however, are inapposite.  In neither case was there an issue with this court's jurisdiction, so neither case called into play the statutory command of § 1447(c) for remand when subject matter jurisdiction is lacking. In fact, this court noted in Williston Basin that the "first-to-file" doctrine is a rule of judicial economy and comity that applies between courts having concurrent jurisdiction.  316 F. Supp. 2d at 867 (citing Eighth Circuit case law).   And, here, the claimed diversity jurisdiction is facially lacking and has not been determined by the court.  Or, to put it differently, the "first-to-file rule" would come into play if this court determined it has subject matter jurisdiction over the removed action, but, once the court determines it lacks subject matter jurisdiction, then remand is required.

In summary, if subject matter jurisdiction is lacking in this case, Congress has declared it must be remanded to the state district court.  This statutory command necessarily requires

---

[3]  An exception *may* be a dismissal for lack of personal jurisdiction in the unusual case in which addressing the subject matter jurisdiction question first is the more difficult.  See  Marathon Oil Co. v. A.G. Ruhrgas, 182 F.3d 291 (5th Cir. 1999) (affirming the district court's dismissal for lack of personal jurisdiction following remand from the Supreme Court).

consideration of the jurisdictional issues presented by the notice of removal and motion to remand prior to considering defendants' motion to dismiss.

### B.   Motion to transfer

#### 1.   A transfer does not eliminate the jurisdictional issue that exists in *this* case

The issue of whether there is federal jurisdiction with respect to *this* case does not go away simply by transferring the case to the federal court in Oklahoma and consolidating it with the action pending there, as the defendants seem to suggest.  This is because there can be no consolidation of cases that are not properly before the court. E.g., United States v. Brandt Const. Co., 826 F.2d 643, 647 (7th Cir. 1987); Mourik Intern. B.V. v. Reactor Services Intern., Inc., 182 F. Supp. 2d 599, 602 (S.D. Tex. 2002).

Further, consolidation cannot be used to confer jurisdiction over an action removed from state court for which no subject matter jurisdiction exists.  E.g., Cunningham v. BHP Petroleum Great Britain PLC, 427 F.3d at 1244-46 (voiding consolidation of removed action, for which there was no subject matter jurisdiction upon removal, and remanding case to state court); Bradgate Associates, Inc. v. Fellows Read & Associates, Inc., 999 F.2d 745, 749-751 (3d Cir. 1993) (ordering remand to state court of the part of a consolidated case that was wrongly removed because of a lack of subject matter jurisdiction).  Consequently, if this case was transferred, the Oklahoma federal district court would be required to consider the same issues presented by the notice of removal and motion for remand, *i.e.*, the request for Palace's realignment or a declaration that  Palace's interests can be ignored, given the lack of diversity presented by the alignment of the parties in the state court complaint.   And, if the Oklahoma federal court similarly concluded that Palace should not be

realigned and that its interest cannot be ignored,  it too would be obligated to remand this case to the state district court in North Dakota, given the statutory requirement of § 1447(c).  See id.

> **2.  Limitations imposed by 28 U.S.C. § 1404(a) governing the transfer of a case to another federal court for reasons of convenience**
>
> **a.  Applicability of 28 U.S.C. § 1404(a)**

The only possible statutory basis for a transfer of this case to the Northern District of Oklahoma is 28 U.S.C. § 1404(a).  While there are other transfer statutes, they do not apply by their terms, notwithstanding any suggestion by the defendants to the contrary. For example, § 1406(a), which provides for the transfer of cases that have been improperly venued, does not apply given that §§ 1441(a) and 1446(a) require that a removed action be filed in the district in which the state court case is pending.  E.g., Nationwide Mut. Ins. Co. v. Tamariz-Wallace, 2009 WL 1850612, at *2 (S.D. Ohio 2009); see  Policci v. Cowles Magazines, Inc., 345 U.S. 663, 666 (1953).  Section 1631, which provides for transfers to correct defects in subject matter jurisdiction, obviously is not applicable given the obligation to remand removed cases for which subject matter jurisdiction is lacking.[4] Finally, the defendants point to § 1407, but this section is limited to transfers made by the judicial panel on multidistrict litigation.

Defendants suggest that the court has the inherent power to transfer a case pursuant to the "first-to-file" doctrine and cite to Marietta Drapery & Window Coverings Co., Inc. v. North River Insurance Company, 486 F. Supp. 2d 1366 (N.D. Ga. 2007) ("Marietta Drapery").  While the court in Marietta Drapery concluded that the "first-to-file" rule was, in essence, a rule of venue, it did not

---

[4] Sections 1406(a), and 1631 also provide that the transfer can be only to a district and division where the case "might have been brought."  The significance of this language in terms of limiting the court's discretion in transferring cases will be discussed below in connection with § 1404(a), which also contains the same language.

hold that it provided the authority for the transfer that the court ordered.  Rather, the court relied upon § 1406(a) for its authority to transfer the case.  Id. at 1370.[5]

In order for a federal court to transfer a case to another federal court, there must be some applicable statutory authority.  This is because Congress has codified the area of transfers of cases between federal courts by enacting a panoply of statutes that govern when that can be done, only some of which have been mentioned above.  See Sinochem International Co. Ltd. v. Malaysia International Shipping Corp., 549 U.S. 422, 430 (2007) (noting that the common-law doctrine of *forum non conveniens*, which allows for dismissal when there is a more convenient forum, applies only when the alternative forum is abroad or, in rare instances, is a state court, since Congress has enacted § 1404(a) governing transfers when another federal court is the more convenient forum); see generally 14D Federal Practice and Procedure § 3827.

In summary, the only statute that provides the court with the authority to transfer this case is 28 U.S.C. § 1404(a).

       **b.**      **Eighth Circuit case law holding that a condition precedent for a § 1404(a) transfer is that the transferring court have subject matter jurisdiction**

The Eighth Circuit has held in at least two cases, the most recent of which was decided in 2005, that a court lacking subject matter jurisdiction cannot transfer a case to another court under 28 U.S.C. § 1404(a).  Integrated Health Services of Cliff Manor, Inc. v. THCI Co., LLC, 417 F.3d 953 (8th Cir. 2005); Klett v. Pim, 965 F.2d 587, 591 n. 7 (8th Cir.1992).  These holdings necessarily

---

[5]  Marietta Drapery's reliance upon § 1406 is suspect, given that § 1406 applies to cases that have been improperly venued. See generally 14D Federal Practice and Procedure § 3827 (discussing the differences between §§ 1404(a) and 1406(a)). And, in that case, the removal statutes provided the necessary venue under the authority cited earlier.  The more appropriate statute probably would have been § 1404(a).  See, e.g., In re Volkswagen of America, Inc., 296 Fed.Appx. 11, 13 (Fed. Cir. 2008) (reviewing a  transfer premised on application of the "first-to-file" doctrine under the provisions of § 1404(a)).

require that the transferring court to resolve any questions regarding its subject matter jurisdiction prior to transferring the case - at least when there exists a serious question regarding the court's jurisdiction.  See id.  This is the situation here, given the facial lack of diversity and the request by the notice of removal that the court either realign the parties or ignore Palace's interests in order to provide for the court's subject matter jurisdiction.

RoDa dismisses this Eighth Circuit authority, stating that the cases are not on point because, according to it, neither addressed a situation involving two identical cases in different federal courts presenting the same legal, factual, and jurisdictional questions.  They also argue that the Eighth Circuit did not provide an explanation for its position, implying that its  holdings are no longer good law.

With respect to the first argument, there is nothing in the two cases that suggest the Eighth Circuit would conclude the point RoDa makes would be distinguishing.  In fact, the contrary is true, since the Eighth Circuit upheld the transfer in Integrated Health Services because of the similarity of the issues in the two pending cases.

As for the suggestion that the Eighth Circuit's position is wrong, other courts and commentators are of the same view.  E.g., Larsen v. Pioneer Hi-Bred Intern., Inc., 2007 WL 3341698, at **1, 7 (S.D. Iowa Nov. 9, 2007);  Thomas v. Exxon Mobil Oil Corp., 2007 WL 489225, at *4 (N.D. Ind. Feb. 8, 2007); Leeds, Morelli, & Brown, P.C., v. Hernandez, 2005 WL 2148994, *3 (E.D.N.Y. Sept. 6, 2005) (holding that a court lacking subject matter jurisdiction over a removed action had no authority under a "first filed" rule to transfer the case to another district embracing the same issue and citing other cases that subject matter jurisdiction is a prerequisite to  transfer); CIBC World Markets, Inc. v. Deutsche Bank Securities, Inc., 309 F. Supp. 2d 637, 643 (D.N.J. March 11,

24

2004) (citing <u>Moore's Federal Practice</u> § 111.14 (3d. 1997)); 15 <u>Federal Practice and Procedure</u> § 3844 & n.12.

That being said, there may be reason to doubt the foregoing authority in light of the Supreme Court's decision in <u>Sinochem</u> *if* the premise is the lack of judicial power to transfer a case prior to deciding a question of subject matter jurisdiction, given that the transfer is a non-merits determination. <u>See</u> 549 U.S. at 433. But, the same is not necessarily true if the premise is one of statutory construction of the transfer statutes in terms of their requirements, which was not addressed in <u>Sinochem</u>.[6] Also, not addressed in <u>Sinochem</u> was the propriety of deferring obvious questions of subject matter jurisdiction in cases that have been removed from state court.

At this point, there is no authority clearly overruling the Eighth Circuit precedent, which this court is obligated to follow. <u>See</u> <u>Larsen v. Pioneer Hi-Bred Intern., Inc.</u>, 2007 WL 3341698, at * 7.

c.     **The language of § 1404(a) providing for transfer only to a court where the action "might have been brought."**

Even more problematic than the Eighth Circuit cases holding that the transferring court must have subject matter jurisdiction to transfer cases pursuant to § 1404(a), is the statutory language which limits transfers only to a district and division where the case "might have been brought." There is also similar limiting language in §§ 1404 and 1631.

What exactly this language means has been the subject of considerable discussion. <u>See generally</u> 15 <u>Federal Practice and Procedure</u> § 3845. But, in terms of this case, the prevailing authority is that this language requires the transferring court to resolve any apparent questions as to the transferee court's subject matter jurisdiction before making the transfer. <u>E.g.,</u> <u>In re Volkswagen</u>

---

[6] For example, it is not out of the realm of possibility that the Supreme Court could conclude that the statutory scheme governing transfer of cases between federal courts contemplates the transferring court resolving questions as to its subject matter jurisdiction first, given, among other things, Congress's enactment of § 1631.

AG, 371 F.3d 201, 203 (5th Cir. 2004); Victory International (USA) Inc. v. Perry Ellis International, Inc., 2008 WL 65177, at \*9 (D.N.J. 2008); Winward v. Pfizer Inc., 2007 WL 3101317, at \*\*1-2 (N.D. Cal. 2007); Jamhour v. Scottsdale Ins. Co., 211 F. Supp. 2d 941, 944-945 (S.D. Ohio 2002); see Hoffman v. Blaski, 363 U.S. 335, 343-344 (1950); see generally 15 Federal Practice and Procedure § 3845 & n.4.  And, clearly this was not an issue addressed by the Supreme Court in Sinochem, which dealt only with the issue of whether a court could dismiss a case under certain circumstances in favor of a foreign court on *forum non conveniens* grounds before addressing a question of subject matter jurisdiction.  The court did not purport to construe the requirements of § 1404(a), which governs the transfer of cases between federal courts on convenience grounds.

As noted above, this is not a case where there is substantial doubt about whether a question exists with respect to the transferee court's jurisdiction given the lack of diversity based on the current alignment of the parties and the affirmative action required by the notice of removal in order to sustain jurisdiction.  Applying what appears to be the prevailing interpretation of § 1404(a)'s requirements, the court is obligated to consider whether the Oklahoma federal court would have subject matter jurisdiction over *this* case before it can be transferred.

Defendants suggest this question has already been decided by the Oklahoma federal court when it denied the motion to dismiss for lack of diversity jurisdiction in that case.  However, even if the jurisdictional issues in that case and this case are the same, the defendants clearly overstate the Oklahoma federal court's ruling.  All that the Oklahoma federal court concluded in denying the motion to dismiss based upon a purported need to realign the parties was that the complexity of the case prohibited consideration of the realignment question at the time, that the parties should be afforded some opportunity for discovery, and that the court might later revisit the issue upon a new

motion by the parties or the court's own motion.  The Oklahoma federal court did not consider the relative positions of the parties and definitively conclude that realignment was unnecessary.

Moreover, while the jurisdictional issues in the two case overlap, they are not necessarily the same, particularly if one or both of the courts apply the "actual and substantial" conflict test in terms of any realignment of the parties.  Under the authority previously cited, the issue before this court is whether, based on the alignment of the parties in the removed state court complaint, there is an "actual and substantial" conflict between Palace, on the one hand, and Zenergy or Zeneco, on the other.  Given the different alignment of the parties in the Oklahoma case, the issue there, if the same test is applied, would be whether there are actual and substantial conflicts between RoDa and the one or more parties who, if realigned with it, would destroy diversity.  More specifically, it would take a realignment of one or more of Palace, Zenergy, or Zeneco (all Oklahoma corporations) to destroy diversity, unless all three were realigned with RoDa, in which case diversity would remain.  And, conceivably, there could be actual and substantial issues between RoDa, on the one hand, and Palace, Zenergy, and Zeneco, on the other, that would not require realignment.  Whether or not that is in fact the case is for the Oklahoma federal district court to resolve.[7]

3.     **Even if there were no statutory or other impediments to transferring the case before addressing the jurisdictional issue, the court should consider the motion to remand first**

Even if there are circumstances in which a court could transfer a removed action to a sister federal court and leave it up to that court to resolve a subject matter jurisdiction question presented by a notice of removal and pending motion to remand, the court should not do so in this case for any one of the following reasons:

---

[7]  Likewise, even if the "primary conflict" test is employed, it is not clear that the same alignment would necessarily result in all cases.  For example, it could be that what is the primary dispute presented by the state court complaint in this case is only a subsidiary dispute in the Oklahoma case.

- As already observed, this is not a case where there is some doubt as to whether there actually exists an issue regarding the court's subject matter jurisdiction, given the facial lack of diversity and the request by the notice of removal to realign the parties. Even in the few unusual cases where the Supreme Court has held it would be permissible to make a non-merits determination prior to the court ruling on whether it has jurisdiction, the Court has stressed this is not the normal progression and that a court should generally consider its subject matter jurisdiction first when it poses "no arduous inquiry." Sinochem, 549 U.S. at 436 (quoting Ruhrgas, 526 U.S. at 587-588). Further, this is arguably more true for cases that have been removed from state court, given the additional considerations of federalism and comity that apply. E.g., University of South Alabama, 168 F.3d at 409-411; see Ruhrgas, 526 U.S. at 586-587.

- The motion to remand has been fully briefed to this court, there is sufficient information to allow the court to resolve the jurisdictional issue, and the jurisdictional question in *this* case presents "no arduous inquiry."

- Deferring the jurisdictional issue presented by the notice of removal and motion to remand creates no judicial savings. As already discussed, the jurisdictional issue in *this* case does not go away upon transfer, and the realignment analysis that the Oklahoma federal court would have to go through for this case is likely different from what might be required in the Oklahoma case, given the differing initial alignment of the parties, the fact this is an action removed from state court, and the statutory command of remand if subject matter jurisdiction does not exist for a removed action.

- Deciding the motion to remand prior to the motion to transfer eliminates the possibility of a court later concluding that § 1404(a), the removal statutes including § 1447(c), and/or the general principles underlying limited federal court jurisdiction required the motion to remand be decided first with the potential result being the vacation of any decisions made by the Oklahoma federal court with respect to this case.

- The fact that there remains some doubt over the Oklahoma federal court's jurisdiction over its case, as suggested by that court's rulings to date as well as the fact that Zenergy and Zeneco have initiated their own protective action in state court in Oklahoma, in which RoDa may also be complicit.[8]

- Given the lingering doubts with respect to the Oklahoma federal court's jurisdiction over its case, the protective action that has been filed in state court in Oklahoma by at least two of the defendants, and the facial lack of diversity for the removed action here, the court has to be more than a little concerned about the possibility of an improvident removal being used to gain a tactical advantage in terms of which state court should proceed first if the Oklahoma federal court action is dismissed. By following the normal progression of resolving the jurisdictional question presented by the notice of removal and motion to remand first, the court avoids the possibility

---

[8] Recently, the Oklahoma state court conducted a hearing on motions to dismiss the action pending before it that were brought by Zavanna and Palace and opposed by Zenergy/Zeneco and RoDa. After listening to the arguments of Zavanna and Palace, the state court judge stated the following:

> If, as you both argue, RoDa and plaintiffs [*i.e.*, Zenergy and Zeneco] are the same, then there's a certainty that the matter across the street will be dismissed. Because if they were realigned, and realigned in the same position, diversity is then no longer lacking. The circuitousness of these arguments is just boggling to me with regard to everybody arguing out of both sides of their mouths across the street, in North Dakota, and in Oklahoma.

(Doc. No. 33, p. 35). Further, even RoDa's counsel agreed during the hearing that the jurisdictional issues are likely to be represented in the Oklahoma federal court action once discovery is complete. (Doc. No. 33, p. 27-29).

29

of it being used as a pawn to further delay the North Dakota state court action and allows the North Dakota courts some say in which state action should take precedence if the Oklahoma federal court case is dismissed.  And, if the Oklahoma federal court should take precedence, there is no reason to expect that the North Dakota courts would not give it deference.

### C.    Motion to stay

Defendants request that the court stay this action pending the Oklahoma federal court ruling on the motion to dismiss for lack of jurisdiction that was  pending in the Oklahoma action when the defendants filed their motions in this case.  However, the Oklahoma federal court has now ruled, at least for the time being.  Consequently, this request is now moot.

To the extent that the defendants seek an indefinite stay, the principles of federalism and comity with the state courts, as previously discussed, support an early remand if this court lacks subject matter jurisdiction.  See, e.g., University of South Alabama, 168 F.3d at 409-41; Meyers v. Bayer AG, 143 F. Supp. 2d 1044, 1046-1049 (E.D. Wis. 2001); cf. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 586-588 (1999).  This then gives the North Dakota courts their say in which action should take precedence, just as the Oklahoma state court will have its say.  Otherwise, an indefinite stay of an improvidently removed case accomplishes indirectly what the court is not empowered to do normally, i.e., stay a state court action, even if it is duplicative of a pending federal court action.  See 28 U.S.C. 2283; see generally E. Chemerinsky, Federal Jurisdiction §§ 11.2.1 & 11.2.3 (4th ed. 2003); C. Wright, A. Miller & M. Kane, 6 Federal Practice and Procedure § 1418 & n.13 (2d ed.)  Moreover, there is nothing in the cases cited by the defendants invoking the "first-to-file" rule (which, as noted earlier, is a rule of judicial economy and comity that applies between courts having concurrent jurisdiction) that suggests this doctrine trumps the court's obligations under

the removal statutes to promptly resolve obvious questions with respect to subject matter jurisdiction and to remand the case if jurisdiction is lacking.

There is a lot of "arm waving" on the part of the defendants over the multiplicity of actions and the waste of judicial resources.   But, to a certain degree, this must be taken at face value.   The Oklahoma federal court's jurisdiction over its case appears to still be in doubt, and RoDa has only itself to blame should that court conclude it lacks subject matter jurisdiction.   Further, Zenergy and Zeneco (who are closely aligned with RoDa) have initiated their own action in Oklahoma state district court.

More fundamentally, however, there is nothing in the Constitution or the statutes governing federal court jurisdiction that guarantees a federal forum for all cases.   In fact, federal courts are duty bound to assure themselves of their jurisdiction, even when "both sides wish us to hear their dispute and our inability to do so  would, regrettably, add delay and expense to the resolution of an already aged and costly lawsuit."   In re C and M Properties, L.L.C., 563 F.3d 1156, 1161 (10th Cir. 2009).

One of the unfortunate costs of having both federal and state courts with sometimes overlapping jurisdictions is the opportunity it provides for parties filing dual actions and the necessity then for the federal and the state courts to work out the necessary accommodations.   See generally Chemerinsky, Federal Jurisdiction § 14.1.   This case is hardly unique in that regard.   And, here there is no reason to believe that the North Dakota court, or the Oklahoma state court for that matter, will act inappropriately if, in fact, the earlier filed Oklahoma federal court action should be given precedence.

Finally, the other reasons articulated above for why the motion to remand should be decided before considering a transfer, assuming the court would have the power to transfer, also support

31

resolving the motion to remand before considering the motion to stay.  Cf. Meyers v. Bayer AG, 143 F. Supp. 2d at 1046-1049.

In short, if there is no subject matter jurisdiction upon removal, an indefinite stay of this case in deference to other pending cases, state or federal, should come from the North Dakota state court upon remand.  Consequently, the motion to remand should be addressed first.

## IV.    RECOMMENDATION

Based on the foregoing,  it is **RECOMMENDED** that the motion for remand (Doc. No. 17) be **GRANTED** and the court remand this case to the state district court.   Also, it is **FURTHER RECOMMENDED** that the pending motions to dismiss, stay, or transfer (Doc. Nos. 8, 11, & 13) be **DENIED AS MOOT**.

### NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within ten (10) days after being served with a copy of this Report and Recommendation.  Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond.

Dated this 14th day of September, 2009.


_/s/  Charles S.  Miller, Jr._____
Charles S.  Miller, Jr.
United States Magistrate Judge